UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SHERMOND ESTEEN                                          CIVIL ACTION

VERSUS                                                  NO. 13-5419

JAMES M. LEBLANC ET AL.                                 SECTION "R" (2)

## REPORT AND RECOMMENDATION

Plaintiff, Shermond Esteen, is a prisoner currently incarcerated in the Rayburn Correctional Center ("Rayburn") in Angie, Louisiana. He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against Secretary of the Louisiana Department of Corrections ("DOC") James M. LeBlanc; Rayburn Warden Robert C. Tanner; Executive Staff Officer Beverly Kelly and Corrections Officers Lieutenant Anthony Odom, Lieutenant Eddie Stroud and Cadet Markkayla Taylor. Esteen alleges that, while incarcerated in Rayburn, he was falsely charged with and unlawfully punished for violating an unconstitutionally vague prison disciplinary rule; subjected to excessive force; and received inadequate medical care. He seeks monetary damages and injunctive relief. Record Doc. No. 1 (Complaint at ¶¶ IV and V).

On October 15, 2013, I conducted a telephone conference in this matter. Participating via telephone were plaintiff pro se; and Assistant Louisiana Attorneys General Michael Keller and Phyllis Glazer, counsel for defendants. Plaintiff was sworn

and testified for all purposes permitted by <u>Spears v. McCotter</u>, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## **THE RECORD**

Esteen testified that he is currently incarcerated at Rayburn based upon a conviction on August 5, 1999, for possession with intent to distribute marijuana for which he is serving a sentence of 33 years in jail.

Esteen confirmed that he asserts the following four (4) kinds of legal claims in this case arising from an incident that occurred at Rayburn on November 18, 2012: (1) False or fabricated disciplinary charges were lodged against him based upon the incident. (2) Disciplinary Rule 21(F) – the offense with which he was charged – is unconstitutional. (3) He was subjected to excessive force by defendant Lt. Odom as part of the incident. (4) He received inadequate medical care for injuries suffered in the incident.

Esteen testified that Rule 21(F) prohibits 'aggravated sex offense.' Actually, the Rule, a copy of which was subsequently provided to me by defense counsel, Record Doc. No. 23-1, prohibits inmates from making sexual remarks, gestures or sounds, flirting or exchanging personal notes or items with other inmates, staff or non-incarcerated persons.

As to the November 18, 2012, incident, Esteen alleged that he "was seated at a game table . . . preparing certificates and awards for his evening callout with

Toastmasters International, while also watching the New Orleans Saints' football game" with "[s]everal dozen [other] offenders in the game room and TV area. . . ." Record Doc. No. 14 p. 2 at ¶ 3(a). He testified that Officer Markkayla Taylor entered the game room and "hollered 'hold the noise' when the Saints had just scored a touchdown." Esteen said that at that time, "I kinda like looked at her . . . [because] to my surprise, you know, why would she say 'hold the noise' [when] this is the New Orleans Saints!" Esteen said he immediately 'looked back down" at some certificates he was preparing as part of a weekly driver's license class he teaches at the jail, when Officer Taylor approached him and asked him what he was signing, and Esteen told her what they were. Esteen testified that Officer Taylor asked him "why did I look at her like that, and I pretty much ignored her because you know I'm watching the game, and everybody in here is watching the game."

Esteen testified that after he completed his certificates and about 20 minutes later, he was told to see Lt. Odom, who asked him if he had a "problem with his officer [Taylor]." He stated that Odom asked Esteen if he had said anything to Officer Taylor, and when Esteen explained, Odom ordered him to place his hands behind his back and handcuffed him. Esteen denied that he had said anything else to Officer Taylor and stated that "more than half" the other inmates in the dormitory had sent letters to the warden supporting his version of the incident.

Esteen testified that he received a writeup charging him with violating Rule 21(F) by staring excessively at Officer Taylor and making suggestive comments concerning their eye contact, and he denied what the writeup accused him of doing. Esteen confirmed that he appeared before a Rayburn disciplinary hearing panel consisting of Officer Beverly Kelly and Lt. Eddie Strong on the following day.  Esteen said that at the hearing he was represented by inmate counsel, who made a statement on Esteen's behalf, but no witnesses were called.  He stated that he was found guilty and during his appeal process he requested that any videotape of the incident be played.  Esteen said the hearing was "very brief," including only inmate counsel's statement on Esteen's behalf and Esteen's own brief identification of himself, denial of the alleged infraction and statement that he was innocent of the charged Rule 21(F) infraction.

Esteen stated that the board found him guilty and changed his custody status from medium security to maximum security on "the working cell block," which means he lost privileges such as outdoors recreation and "callouts" and was required to stay in his cell 23 hours per day with only one hour outdoors.

Esteen said that his appeal to the warden was partially successful in that the warden overturned his sentence, which originally had been for at least six months, but which the warden changed to a suspended 90-day sentence after he had been in maximum security for 40 days.  Esteen explained that the disciplinary conviction itself

was not overturned and remains on his prison record, but that he received no other penalty and was returned to medium security, where he remains.

As to his claim that Rule 21(F) is unconstitutionally vague and overly broad, Esteen argued that even the statements that Officer Taylor alleged were made by Esteen ["she asked me, 'what did I want,' and I said 'I just answered that with my eyes . . . you know what that means'"], which Esteen denied making, in no way constituted a sex offense prohibited by Rule 21(F).

As to his excessive force claim, Esteen testified that when Lt. Odom placed the handcuffs on him behind his back, he "placed the cuffs on my hands so tight, I couldn't even feel my hand." He testified that when he began to move forward, Odom grabbed his right wrist and twisted it upwards, causing "a lot of pain." Esteen said he asked Odom to loosen the cuffs because they were too tight, but Odom merely twisted his handcuff key in the cuffs without loosening them, which hurt Esteen more. In his written submissions, Esteen alleged that "the handcuffs were jammed. As a result, Lt. Odom aggressively and awkwardly twisted Esteen's wrist in an attempt to free the jammed handcuff . . . then aggressively twisted his wrist to compel him to stand a certain way and move forward." Record Doc. No. 14 at p. 3 of 7, "Statement of Facts" ¶ 3(e). Esteen testified that Odom twisted his arm up again and moved him forward to the cell blocks,

5

where he asked for medical treatment, and the cuffs were removed.  Esteen testified that the cuffs were on his wrists for about 12 minutes.

Esteen stated that he had received and reviewed the medical records that I ordered defendants to produce, Record Doc. Nos. 6 and 20, and that they are accurate, except that they did not include the wrist x-ray he received on June 19, 2013.  He confirmed the notation in the medical records that he received a right carpal tunnel steroid injection on January 24, 2013, ibuprofen and a wrist brace, which the doctor told him he should continue to wear. He stated that his wrist continues to give him problems, but it is "healing like it is, but it's still puffy from all that time." Esteen testified that he received a wrist x-ray on or about June 19, 2013, but he has not yet received the results of that x-ray.  He noted that on the day he initially requested medical attention for his wrist, it hurt so badly that he could not even sign his name.

After the hearing, at my request, defense counsel provided me and plaintiff with copies of the challenged Rule and related institutional directives referenced by Esteen in his written submissions and testimony, together with the report concerning Esteen's wrist x-ray.  Record Doc. Nos. 22-24.

Rule 21(F) provides in pertinent part:

Other Prohibited Sexual Behavior (offender-on-offender, offender-on-staff or non-incarcerated person):  No offender shall:  make sexual remarks,

gestures or sounds; flirt; exchange personal items, etc. or make sexual threats in conversation by correspondence or telephone.

Record Doc. No. 23-1 at p. 5.

Esteen's verified medical records indicate that plaintiff was seen by a Rayburn doctor for his right wrist on December 11, 2012, about three weeks after the incident, and referred to "LSU Physiatry" the next day, when "carpal tunnel syndrome" was diagnosed. On January 24, 2013, he was given a wrist injection of lidocaine, a numbing agent and pain reliever, and celestone, a corticosteroid used to reduce inflammation. He was also given an electromyogram and a wrist brace. On June 19, 2013, he was seen by a Rayburn doctor for complaints of ongoing wrist pain. The doctor ordered an x-ray and prescribed ibuprofen as needed for one year. Record Doc. No. 20.

The "Final Radiology Report" of Dr. Kevin McDonnell concerning Esteen's right wrist x-ray taken on August 20, 2013, states in pertinent part: "Findings: The radial ulnar joint is normal. Carpus is normal. The metacarpals are normal. Visualized portions of the phalanges are normal. No triquetal fracture. . . Impression: Normal wrist." Record Doc. No. 24.

## ANALYSIS

### I.    STANDARDS OF REVIEW

A prisoner's pro se complaint for alleged civil rights violations must be screened by the court as soon as practicable after docketing, regardless whether it has also been

filed in forma pauperis.  28 U.S.C. § 1915A(a); <u>Martin v. Scott</u>, 156 F.3d 578, 579-80 (5th Cir. 1998).  Such complaints by prisoners must be dismissed upon review if they are frivolous or fail to state a claim.  28 U.S.C. § 1915A(b)(1).

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'"  <u>Moore v. McDonald</u>, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact." <u>Davis v. Scott</u>, 157 F.3d 1003, 1005 (5th Cir. 1998); <u>Reeves v. Collins</u>, 27 F.3d 174, 176 (5th Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'"  <u>Macias v. Raul A. (Unknown), Badge No. 153</u>, 23 F.3d 94, 97 (5th Cir. 1994) (quoting <u>Neitzke v. Williams</u>, 490 U.S. 319, 327 (1989)).

The purpose of a <u>Spears</u> hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.  <u>Spears</u>, 766 F.2d at 180.  "[T]he <u>Spears</u> procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners."  <u>Davis</u>, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite

statement under Fed. R. Civ. P. 12(e).  Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990).  "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."  Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable.  "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents.  A defendant may not use medical records to refute a plaintiff's testimony at a Spears hearing."  Id. (citing Wilson, 926 F.2d at 482-83; Williams v. Luna, 909 F.2d 121, 124 (5th Cir. 1990)).  However, "'[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'"  Gobert v. Caldwell, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

After a Spears hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, Jackson v. Vannoy, 49 F.3d 175, 176-77 (5th Cir. 1995); Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the

facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." Id. at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." Moore, 976 F.2d at 269. A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, three of the four claims asserted in plaintiff's complaint should be dismissed under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1), either as legally frivolous because they lack an arguable basis in law or under Rule 12(b)(6) in light of Esteen's testimony explaining the factual basis of his claims. Plaintiff's claims that he was falsely charged and disciplined for violation of an unconstitutional prison disciplinary rule, as amended by his testimony at the Spears hearing, fail to state a cognizable claim of violation of his constitutional rights, even under the broadest

reading.[1]  However, further proceedings concerning his excessive force claim against Lt. Odom arising from the alleged misuse of handcuffs appear necessary.

## II.    FALSE DISCIPLINARY CHARGES

Esteen's claims that his constitutional rights were violated based on false or fabricated disciplinary charges and the resulting proceedings fail to state a claim of violation of his constitutional rights and must be dismissed.

In Sandin v. Connor, 515 U.S. 472, 481-83 (1995), the United States Supreme Court held that analysis of a prisoner's due process claim relating to his placement in lockdown or other denial of prison privileges as disciplinary punishment begins with determining whether a constitutionally protected liberty interest exists.  "Liberty interests protected by the Fourteenth Amendment may arise from two sources–the Due Process Clause itself and the laws of the States."  Hewitt v. Helms, 459 U.S. 460, 466 (1983). In Sandin, the Supreme Court recognized that, although the States may create liberty interests, "these interests will generally be limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin, 515 U.S. at 484 (citations omitted).  Thus, in Sandin, when a prisoner was placed in disciplinary segregation for 30 days and the placement did

---

[1]The court must "liberally construe briefs of pro se litigants and apply less stringent standards to parties proceeding pro se than to parties represented by counsel," Smith v. Lonestar Constr., Inc., 452 F. App'x 475, 476 (5th Cir. 2011), cert. denied, 132 S. Ct. 1746 (2012) (quotation omitted); Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994), and I have done so in this case.

not inevitably affect the duration of his sentence, the Court held that due process does <u>not</u> require that a prisoner be afforded the procedural mechanisms previously prescribed in <u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974), and <u>Hewitt</u>, 459 U.S. at 460.

"[T]he Due Process Clause does not protect every change in conditions of confinement which has a substantial adverse effect upon a prisoner." <u>Madison v. Parker</u>, 104 F.3d 765, 767 (5th Cir. 1997). "Prisoners held in lawful confinement have their liberty curtailed by definition, so the procedural protections to which they are entitled are more limited than in cases where the right at stake is the right to be free from confinement at all." <u>Wilkinson v. Austin</u>, 545 U.S. 209, 225 (2005) (citations omitted). The Fifth Circuit held in <u>Madison</u> that a prisoner's 30-day commissary and cell restrictions imposed as punishment for disciplinary violations were "merely changes in the conditions of his confinement and do not implicate due process concerns." <u>Madison</u>, 104 F.3d at 768; <u>accord</u> <u>Hernandez v. Velasquez</u>, 522 F.3d 556, 563 (5th Cir. 2008); <u>Dixon v. Hastings</u>, 117 F. App'x 371, 372 (5th Cir. 2005); <u>Malchi v. Thaler</u>, 211 F.3d 953, 957-58 (5th Cir. 2000). In <u>Hernandez</u> and <u>Madison</u>, the Fifth Circuit held that such restrictions do <u>not</u> represent the type of atypical, significant deprivation in which a state might create a liberty interest. <u>Hernandez</u>, 522 F.3d at 563; <u>Madison</u>, 104 F.3d at 768.

Examples of prison hardships that <u>would</u> qualify as so atypical and significant as to implicate due process considerations include unwanted administration of anti-

psychotic drugs, involuntary commitment to a mental hospital or extension of the prisoner's sentence for his underlying criminal conviction.  <u>Sandin</u>, 515 U.S. at 484.

In the instant case, Esteen's testimony and his written submissions establish that the actions taken against him based upon the allegedly false disciplinary charges and resulting hearing were his change in custodial status from medium security to maximum security in the working cell block, where he was deprived of privileges, including outdoors recreation restricted to one hour per day, loss of "callouts" and restriction to his cell for 23 hours per day.  He testified that his punishment lasted 40 days, when the warden ended it.  None of these actions constitute such an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" that particular forms of process of the type described in <u>Wolff</u> were required.  <u>Sandin</u>, 515 U.S. at 484; <u>Madison</u>, 104 F.3d at 768; <u>see Johnson v. Livingston</u>, 360 F. App'x 531, 532 (5th Cir. 2010) (citing <u>Malchi v. Thaler</u>, 211 F.3d 953, 958 (5th Cir. 2000)) ("Loss of privileges and cell restriction do not implicate due process concerns."); <u>Hernandez</u>, 522 F.3d at 563 (distinguishing the "extreme conditions" described in <u>Wilkinson</u> and holding that non-disciplinary "confinement to a shared cell for twelve months with permission to leave only for showers, medical appointments and family visits . . . is by no means an atypical prison experience"); <u>Dixon</u>, 117 F. App'x at 372 ("loss of commissary privileges, cell restriction, placement in administrative segregation, and extended work schedule were

not atypical punishments requiring due process protections"); <u>Payne v. Dretke</u>, 80 F. App'x 314, 314 (5th Cir. 2003) ("commissary and recreation restrictions [as disciplinary punishment] . . . do not implicate a liberty interest under the Due Process Clause").

In addition, inmates have no protected liberty interest in specific recreational opportunities and the "[d]eprivation of exercise is not a <u>per se</u> constitutional violation." <u>Lewis</u>, 2001 WL 1485821, at *1 (citing <u>Stewart</u>, 669 F.2d at 336 n.19); <u>Miller</u>, 563 F.2d at 751 n.12); <u>accord</u> <u>Sampson</u>, 2009 WL 837640, at *16 (citing <u>Smith</u>, 945 F.2d at 1043; <u>Beck</u>, 842 F.2d at 762; <u>Lato</u>, 773 F. Supp. at 978).

Even if some process might be required for these sorts of prison disciplinary penalties, it is clear that Esteen received sufficient procedural rights under <u>Sandin</u>. He was given a written statement notifying him of the charge against him. He received a hearing before the disciplinary board, where he was represented by inmate counsel. He was provided with an opportunity to make a statement on his own behalf. He was afforded an appeal to the warden that was partially successful in that his time in disciplinary confinement was reduced.

In addition, the case law is clear that an inmate's allegation that a prison official asserted false disciplinary charges against him fails to state a claim under Section 1983 when the prisoner is afforded due process protection through a subsequent hearing. <u>Harris v. Smith</u>, No. 11-30928, 2012 WL 4328236, at *2 (5th Cir. Sept. 21, 2012)

(quoting Collins v. King, 743 F.2d 248, 253-54 (5th Cir. 1984)); accord Doolittle v. Holmes, 306 F. App'x 133, 134 (5th Cir. 2009); Moore v. Butler, 211 F.3d 593, 2000 WL 329165, at *1 (5th Cir. Mar. 17, 2000); Landor v. Lamartiniere, No. 12-103-BAJ-SCR, 2012 WL 3777157, at *7 (M.D. La. Aug. 1, 2012), report & recommendation adopted, 2012 WL 3777149 (M.D. La. Aug. 29, 2012); Price v. Quarterman, No. 5:09cv153, 2010 WL 715536, at *4 (E.D. Tex. Feb. 23, 2010).

In the instant case, Esteen does not dispute that he had a disciplinary hearing. His testimony establishes that the hearings were adequate under Sandin in light of the penalties he received. Thus, Esteen fails to state a claim that his due process rights were violated because of allegedly false disciplinary charges, and no constitutional violation has been stated in this case concerning Esteen's disciplinary charges or proceedings.

III.   CONSTITUTIONALITY OF PRISON RULE

Esteen argues that the prison rule under which he was charged with a disciplinary violation is invalid because it is unconstitutionally vague. "It is a mistake to conclude that statutes are judged for vagueness and overbreadth only with reference to their literal statutory language." J. Varat, W. Cohen, V. Amar, Constitutional Law at p. 1369 (Foundation Press 2009). Even if the language of a governmental regulation appears vague or overly broad on its face, no cognizable Section 1983 claim is stated unless the vagueness of the provision results in a violation of constitutional rights. Construed

broadly, given the subject matter of the challenged Rule and the conduct Esteen alleges was punished under the regulation, it appears that Esteen is arguing that either his First or Eighth Amendment rights were violated by the vagueness of Rule 21(F).

The parameters of Esteen's Eighth Amendment rights are discussed in detail below concerning the handcuffing claim.  It suffices to say for purposes of his claim that Rule 21(F) is unconstitutional, however, that – on its face – the purpose of the Rule is clearly to maintain prison order and discipline and in no way violates contemporary standards of decency or is repugnant to the conscience of mankind.  It cannot possibly be concluded that the Rule's existence or enforcement constitutes cruel and unusual punishment in violation of the Eighth Amendment.

As to any First Amendment aspect of this claim, in Beard v. Banks, 548 U.S. 521 (2006), the United States Supreme Court considered an inmate's First Amendment challenge to a prison regulation restricting his access to newspapers, magazines and photographs.  The Court reiterated its holdings and the standards previously expressed in Turner v. Safley, 482 U.S. 78 (1987), and Overton v. Bazzetta, 539 U.S. 126 (2003), by again recognizing

> that imprisonment does not automatically deprive a prisoner of certain important constitutional protections, including those of the First Amendment . . .  But at the same time the Constitution sometimes permits greater restriction of such rights in a prison than it would allow elsewhere. . . .  As Overton (summarizing pre-Turner case law) pointed out, courts owe substantial deference to the professional judgment of prison

> administrators.  And Turner reconciled these principles by holding that
> restrictive prison regulations are permissible if they are reasonably related
> to legitimate penological interests, and are not an exaggerated response to
> such objectives . . . .

Beard, 548 U.S. at 528 (quotation and citations omitted).  The Beard Court applied the

same standard it had previously set in Turner in stating that four factors must be

evaluated in determining the constitutionality of a prison practice or regulation that

deprives or restricts a prisoner's First Amendment right of access to newspapers:

> First, is there a valid, rational connection between the prison regulation and
> the legitimate governmental interest put forward to justify it?  Second, are
> there alternative means of exercising the right that remain open to prison
> inmates?  Third, what impact will accommodation of the asserted
> constitutional right . . . have on guards and other inmates, and on the
> allocation of prison resources generally?  And, fourth, are ready
> alternatives for furthering the governmental interest available?

Id. at 529 (quotations and citations omitted).

In a recent decision addressing the First Amendment rights of prisoners, the Fifth

Circuit noted that the Supreme Court in Beard "acknowledged the particular importance

of the first factor, explaining that in some cases the second, third, and fourth factors can

'add little, one way or another, to the first factor's basic logical rationale.'"  Morgan v.

Quarterman, 570 F.3d 663, 666 (5th Cir. 2009) (quoting Beard, 548 U.S. at 532).  Thus,

prison restrictions on an inmate's speech do not violate his First Amendment rights if the

restrictions are reasonably related to legitimate penological interests.  Beard, 548 U.S.

17

at 530; Thornburgh v. Abbott, 490 U.S. 401, 413 (1989); Turner, 482 U.S. at 89; Morgan, 570 F.3d at 666.

In the instant case, the legitimate penological reasons and/or interests in institutional security and order justifying Rule 21(F)'s prohibition on the conduct it describes are self-evident.  It cannot be doubted that the conduct described in Rule 21(F) must be prohibited if order and security in the prison setting are to be maintained.  The presence of women as correctional officers in tight prison recreational and other settings where "dozens" of male inmates are incarcerated is a common present-day occurrence. The challenged Rule addresses that fact.  The disciplinary board found that Esteen's conduct violated the Rule.  Section 1983 claims are not bases for an inmate's appeal of the fact-findings of a prison disciplinary board. Courts must accord great deference to prison officials' administrative decisions and should not interfere with legitimate prison administration, including the substantial interest in maintaining prison order and discipline, in the absence of a constitutional violation.  Bell, 441 U.S. at 547-48; Smith v. Bingham, 914 F.2d 740, 742 (5th Cir. 1990).  Such claims may proceed only where a showing of a constitutional violation has adequately been asserted.  No such First or Eighth Amendment violation has been stated in this case.

IV.    <u>EXCESSIVE FORCE</u>

Esteen was a convicted prisoner at the time of the November 18, 2012 incident about which he complains.  The United States Supreme Court has "held that 'the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury.'"  <u>Wilkins v. Gaddy</u>, 130 S. Ct. 1175, 1176 (2010) (quoting <u>Hudson v. McMillian</u>, 503 U.S. 1, 4 (1992)).  The Supreme Court confirmed that the standards it had established in <u>Hudson</u> remain the law.

> The "core judicial inquiry," we held [in <u>Hudson</u>], was not whether a certain quantum of injury was sustained, but rather "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  503 U.S. at 7, 112 S. Ct. 995; <u>see also</u> <u>Whitley v. Albers</u>, 475 U.S. 312, 319-321, 106 S. Ct. 1078, 89 L. Ed.2d 251 (1986).  "When prison officials maliciously and sadistically use force to cause harm," the Court recognized, "contemporary standards of decency always are violated . . . whether or not significant injury is evident. . . ."  <u>Hudson</u>, 503 U.S. at 9 . . . .
>
>         . . . .  As we stated in <u>Hudson</u>, not "every malevolent touch by a prison guard gives rise to a federal cause of action."  503 U.S. at 9, 112 S. Ct. 995.  "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition <u>de minimis</u> uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind."  <u>Ibid.</u> (some internal quotation marks omitted).  An inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim.  <u>Ibid.</u> (quoting <u>Johnson v. Glick</u>, 481 F.2d 1028, 1033 (2d Cir. 1973)).

<u>Id.</u> at 1178.

Under some circumstances, an inmate may state a claim for the unconstitutional use of excessive force in connection with the use of handcuffs.  See Fennell v. Quintela, 393 F. App'x 150, 152, 155 (5th Cir. 2010) (Plaintiff alleged that prison officer ordered him "to place his arms through the shower stall's food tray slot so that she could remove his handcuffs. Officer Lopez-Lopez, however, did not simply remove Fennell's handcuffs; instead, she grabbed his wrists and twisted them."  "If proven, [plaintiff's] version of events . . . would allow a reasonable jury to find that [the officer] used excessive force in violation of the Constitution."); Watts v. Smart, 328 F. App'x 291, 292, 293-94 (5th Cir. 2009) (prisoner's evidence that defendants struck him without provocation while he was in restraints "gives rise to genuine fact issues as to whether the force Sergeant Smith and Officer Meyer applied was excessive and whether their conduct was objectively reasonable."); Morris v. Trevino, 301 F. App'x 310, 313 (5th Cir. 2008) (Prisoner alleged that officer "twisted his arms into painful positions while his hands were handcuffed behind his back, yanked his hands through the tray slot opening of his cell, beat and punched on his arms, and punched him in the face." "[T]aking Morris's allegations as true, the force exerted by [defendant] was disproportionate to the amount of force necessary to maintain or restore order because the assault was, according to Morris, unprovoked.").

In this case, I cannot conclude in light of the decisions cited above that the forceful use of handcuffs alleged by Esteen fails to state a cognizable Section 1983 claim rising to the level of a constitutional violation under the applicable standard.  Specifically, I cannot determine as a screening matter, accepting – as I must – Esteen's allegations as true for present purposes, whether Lt. Odom's alleged forceful yanking of the handcuffs in reaction to Esteen's conduct regarding a woman correctional officer could plausibly have been thought necessary in this particular situation as an appropriate use of force employed in an attempt to maintain jailhouse order and security, or instead was a malicious or sadistic attempt to injure, as portrayed by plaintiff.

Under these circumstances, I recommend that further proceedings be conducted as to Esteen's excessive force claim against Lt. Anthony Odom only.

V.      MEDICAL CARE

Esteen testified that he was a convicted prisoner at all times during which defendants allegedly failed to provide him with adequate medical care for the wrist injury suffered in the handcuffing incident.  In Estelle v. Gamble, 429 U.S. 97, 104 (1976), the Supreme Court held that a convicted prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors. Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts

21

repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment.  Id. at 105-06; accord Gregg v. Georgia, 428 U.S. 153, 182-83 (1976). "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it."  Farmer v. Brennan, 511 U.S. 825,  847 (1994).

An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment.  "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities."  Id. at 834 (quotation omitted).

Further, the plaintiff must establish that the defendant possessed a culpable state of mind.  Id. (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id. at 837.  "Mere negligence or a failure to act reasonably is not enough. The officer must have the subjective intent to cause harm."  Mace v. City of Palestine, 333 F.3d 621, 626 (5th Cir. 2003).  If the court finds that one of the components of the test is not met, it need not address the other component.  Davis, 157 F.3d at 1005.

The Supreme Court has recently reaffirmed that "deliberate indifference" is a stringent standard of fault, requiring proof that a municipal actor

22

disregarded a known or obvious consequence of his action.  Board of the County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 117 S. Ct. 1382, 1391 (1997).  The deliberate indifference standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

Southard v. Texas Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (additional citations omitted) (emphasis added).  "'Subjective recklessness,' as used in the criminal law, is the appropriate test for deliberate indifference."  Norton, 122 F.3d at 291.

Initially, it cannot be concluded that Esteen's carpal tunnel syndrome constituted a serious medical need for constitutional purposes.  Esteen has alleged facts, confirmed by his testimony and the verified medical records, that establish that his condition has for the most part been resolved by the treatment he received, leaving at most only some continuing soreness and puffiness.  Certainly, plaintiff did not suffer "a life-long handicap or permanent loss" of the type many courts require to constitute a serious medical need for constitutional purposes. See Hill v. Dekalb Reg'l Youth Detention Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994), overruled in part on other grounds by Hope v. Peltzer, 536 U.S. 730, 739 (2002) (citing Monmouth County v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (medical need is serious when it "results in an inmate's suffering 'a life-long handicap or permanent loss'")); Dickson v. Colman, 569 F.2d 1310, 1311 (5th Cir. 1978) (no serious medical need was demonstrated when plaintiff's high blood pressure presented no "true danger" or "serious threat" to his health). Willacy v. County

of Brevard, No. 04-cv-1666-Orl-18DAB, 2007 WL 1017657, at *9 (M.D. Fla. Mar. 30, 2007) (inmate who alleged that he suffered numerous lacerations, contusions, bruising and burning sensation in his eyes after being attacked by another inmate, but did not seek further medical assistance after his wounds were cleaned, failed to assert a serious medical need).

Even if plaintiff's carpal tunnel syndrome presented a serious medical need, Esteen's testimony and the verified medical records establish that jail personnel were not deliberately indifferent to his medical condition in the constitutional sense. Esteen has alleged facts, confirmed by his testimony and his medical records, that negate any inference of deliberate indifference by jail officials. Esteen was seen by nurses and doctors concerning his wrist injury on several occasions. He was provided with an EMG, a wrist brace, ibuprofen, a pain relief and corticosteriod injection, and a follow-up x-ray and medical examination, all of which have resolved his problem to a substantial extent.

Under these circumstances, it cannot be inferred that jail personnel were deliberately indifferent in any way to plaintiff's condition. While it is clear from his allegations and testimony that Esteen is not satisfied with the speed or nature of his medical care, and that he experienced some delay in his initial treatment, no finding of deliberate indifference can be made based on this record.

> [T]he decision whether to provide additional treatment is a classic example of a matter for medical judgment. A showing of deliberate indifference

> requires the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints, <u>intentionally</u> treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.  Deliberate indifference is an extremely high standard to meet.

<u>Gobert</u>, 463 F.3d at 346 (footnotes, citations and internal quotations omitted) (emphasis added).  No such showing has been made on the current record.  In Esteen's case, the decisions made by the treating medical providers to render the care that they gave, rather than more specialized care, are classic examples of the exercise of "medical judgment," which, even if incorrect, cannot serve as the basis for a finding of deliberate indifference in the constitutional sense.

Mere delay in receiving care is not in and of itself a constitutional violation. <u>Easter v. Powell</u>, 467 F.3d 459, 463 (5th Cir. 2006); <u>Mendoza v. Lynaugh</u>, 989 F.2d 191, 195 (5th Cir. 1993); <u>Wesson v. Oglesby</u>, 910 F.2d 278, 284 (5th Cir. 1990).  Regardless of the length of delay, plaintiff at a minimum must show deliberate indifference to serious medical needs.  <u>Wilson</u>, 501 U.S. at 298.  No such showing can be made in this case in light of the continuing medical attention Esteen has received for his wrist injury during his incarceration.

Contentions like Esteen's that amount to a disagreement with the speed, quality or extent of medical treatment or even negligence do not give rise to a Section 1983 claim.  "[A]lthough inadequate medical treatment may, at a certain point, rise to the level

25

of a constitutional violation, malpractice or negligent care does not." Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999) (citation omitted) (active treatment of prisoner's serious medical condition that ultimately resulted in death does not constitute deliberate indifference, even if treatment was negligently administered); See Corte v. Schaffer, 24 F.3d 237, 1994 WL 242793, at *1 (5th Cir. 1994)) (Contrary to plaintiff's allegation that he had received "no treatment" because he believed he needed a referral to a specialist, he failed to demonstrate deliberate indifference when he was seen by prison medical personnel with results being within a normal range.); Marksberry v. O'Dea, 173 F.3d 855, 1999 WL 98533, at *2 (6th Cir. Jan. 28, 1999) (plaintiff who alleged inadequate treatment for broken hand failed to state constitutional violation, when he was examined by physician and received x-rays and medication); Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993) (prisoner's disagreement with the type or timing of medical services provided cannot support a Section 1983 claim); Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991) (plaintiff, who was 18 months post-surgical implantation of hip prosthesis, who complained of pain in his hip and who was ultimately diagnosed with broken wires in the prosthesis, failed to state a claim for deliberate indifference when he was seen by medical personnel "numerous times for problems relating to his hip."); Wesson, 910 F.2d at 284 (allegations establishing provision of medical treatment are inconsistent with inference of deliberate indifference).

Plaintiff's complaints in this case about his medical care for his wrist injury fail to state a claim of violation of his constitutional rights sufficient to obtain relief under Section 1983 because he cannot establish "deliberate indifference" under the applicable constitutional standard.  His medical care claims must therefore be dismissed.

## RECOMMENDATION

For all of the foregoing reasons, **IT IS RECOMMENDED** that plaintiff's claims under Section 1983 that he was falsely charged and disciplined under an unconstitutional prison disciplinary rule and that he received inadequate medical care be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

**IT IS FURTHER RECOMMENDED** that plaintiff's excessive force claim against Lt. Odom requires further proceedings and that it not be dismissed at this time.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  <u>Douglass v.</u>

United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[2]

New Orleans, Louisiana, this ____11th____ day of March, 2014.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[2]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

28